REUBEN GORDON *v.* BLANCHE HEFLIN OPA-
LECKY.

*Automobile Collision—Injuries to Passenger—Action Against
Driver—Damages—Medical Witness—Hypothetical
Questions—Instructions—Contributory
Negligence.*

That a question asked an expert witness assumes a fact of which there is no evidence is harmless, if the answer ignores the assumption.                                    p. 544

In an action for personal injuries, it was within the court's discretion to allow plaintiff to be recalled to testify as to nosebleeds from which she suffered after the accident, as a basis for a hypothetical question sought to be asked an expert.  p. 544

Error in allowing a question to a witness is harmless, if the court on motion struck out the answer.                     p. 545

In an action for personal injuries, including an injury to plaintiff's nose, it was proper to ask a physician who had examined plaintiff whether the catarrhal condition which he found in her ear was due to the condition of her nose.  p. 545

That the form of a question asked a witness was bad cannot be considered on appeal if no objection to it on that ground was made below.                                    p. 545

A question asked a medical expert, seeking his opinion upon the hypothetical facts set up by it, should state all the facts which have a direct and essential relation to the matter upon which he is asked to express an opinion.          pp. 546, 547

A hypothetical question asked a medical expert, who first examined plaintiff seven months after the accident in which she was injured, as to whether the nervous and hysterical condition in which he found her was the natural and probable result of her injuries, *held* improper, in failing to recite, in addition to plaintiff's testimony as to the location of her injuries and her loss of weight, the facts proved, that about a month after the accident she returned to her work in a factory, and was discharged by her physician as cured except for her nervousness, that she was married about two months later, and that she kept house for a family of five.          pp. 546, 548

A hypothetical question asked an expert witness is improper in form if it states the facts to be assumed without connecting them in any way with the interrogative part of the question, thus separating it into two separate, distinct, and independent parts, having no apparent relation to each other.   pp. 548, 549

The allowance of a question to an expert witness, on an issue as to plaintiff's injuries, which was improper, by reason of the separation of its recital of facts and its interrogative part, and also owing to its omission of important facts proved which might influence the answer, was harmless when the answer disregarded the statement of facts, the witness basing his opinion upon a statement made to him by plaintiff, which was in without objection, and upon his observation of her.          p. 549

Error in refusing to strike out a medical expert's statement, in effect that if plaintiff was well and happy before the accident, and nervous and unhappy after the accident, he would naturally think that the accident caused her condition, was not ground for reversal, this being merely a guess which would be made by the average man.          p. 549

In an action against two defendants on account of personal injuries, the jury may properly find against one defendant alone, without first finding that the other defendant in no way contributed to the accident.          p. 550

One may proceed against any one of several joint tort-feasors regardless of the others.                                    p. 550.

Evidence that plaintiff's nose was fractured, resulting in an obstruction of her breathing and a catarrhal condition affecting her general comfort, that her wounds left permanent scars, and that she' was nervous and could not sleep well, *held* sufficient to support the hypothesis of her damage prayer, that she was permanently injured, and that her injuries disabled her from engaging in those business pursuits and housewifely duties for which she would otherwise be qualified.                p. 550

That plaintiff's damage prayer instructed the jury that they were to consider "how far" plaintiff's injuries were calculated to disable her from engaging in business pursuits and house-wifely duties, without any qualifying phrase such as "at all," while objectionable as assuming that the injuries did so disable plaintiff, was not injurious to defendant, in view of the fact that the verdict for plaintiff was for substantial damages.

pp. 550, 551

Defendant's prayer that plaintiff could·not recover if she signed a paper denying that the accident resulted from defendant's negligence, and the accident happened as stated therein, and defendant was not guilty of negligence contributing to the accident, was properly refused as likely to confuse the jury and lead them to believe that she could not recover if she signed the paper.                                    p. 551

A paper signed by plaintiff, stating that the accident in which she was injured was not due to defendant's negligence, was not a release, but merely an unsworn statement of plaintiff's legal conclusion, not concluding the question of defendant's negligence, and relevant and material only as affecting the weight of plaintiff's testimony.                                    p. 551

In an action by a passenger in an automobile against the driver on account of injuries received in a collision with a truck, defendant's prayer that, if plaintiff knew that defendant was driving recklessly and she failed to protest, the jury might infer that she acquiesced, and that if she did she was guilty of contributory negligence barring recovery, was properly modified by denying the right to find such acquiescence unless the reckless

driving continued long enough to give plaintiff a reasonable opportunity to protest.                                    p. 552

In such action, defendant's prayer that plaintiff could not recover if she could have seen the truck in time for her to warn him and for him to stop the automobile so as to avoid the collision, was bad even when modified so as to require the jury to find further that the truck was on the left hand side of the road, since plaintiff's failure to look out for approaching vehicles was merely evidence of negligence and not conclusive proof thereof.                                    p. 552

Defendant cannot complain that a prayer submitted by him, which was inherently bad, was so modified as to render it somewhat less objectionable.                          p. 552

A definition of negligence, added by the court to a prayer, as "the lack of ordinary care such as would be exercised by an ordinarily careful and prudent person upon similar circumstances," is not objectionable.                          p. 553

*Decided March 22nd, 1927.*

Appeal from the Superior Court of Baltimore City (UL-MAN, J.).

Action by Blanche Heflin Opalecky against Reuben Gordon and L. Byron Nicodemus. From a judgment against defendant Gordon, he appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward L. Ward,* with whom was *Edwin W. Wells* on the brief, for the appellant.

*Leonard Weinberg,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Mrs. Blanche Heflin Opalecky, the appellee in this case, was injured in a collision between an automobile owned and

operated by the appellant, Reuben Gordon, and a motor truck driven by one L. Byron Nicodemus, under circumstances which, under the evidence in this case, warranted the inference that it was occasioned by the appellant's negligence. The accident occurred on November 4th, 1924, and on March 31st, 1925, the appellee brought this action in the Superior Court of Baltimore City against the appellant and Nicodemus, to recover compensation for her injuries. The case was tried in due course before the court and a jury, and the verdict and judgment being for the appellee against the appellant, he appealed. He made no point in this court that the appellee was not entitled to recover, so that the only questions raised by the appeal, with which we are concerned, relate to the extent of the appellee's injuries, the evidence relating thereto, and the proper measure of compensation therefor. There are in the record twelve exceptions, of which the eighth, ninth, tenth and eleventh were waived in this court, and of the others, the first seven relate to the admissibility of evidence and the twelfth to the trial court's action on the prayers, and these will be considered in order.

All of the first seven exceptions relate to hypothetical questions which the court allowed over the appellant's objection, and in dealing with them it will be necessary to review so much of the evidence as relates to the nature and extent of the appellee's injuries, which were the subjects of those questions.

The appellee, who was at the time of the accident sitting on the front seat of the automobile at the right of the driver, was, as a result of the collision, thrown out of it on her face in the road, and she asserts that she sustained thereby certain injuries which she described in her testimony.

She said that "she was cut right here, cut further down, cut very bad, her nose was cut very bad right here, and then she was cut on the jaw and her lower lip, and the whole side of her face was cut and bruised all over, and she had two pieces of glass up her nose, which were taken out by Dr. Dehoff over a week after the accident happened; that she

was treated out there that night by Dr. Kasten; that she was taken into Mrs. Davis' house, Mrs. Davis living close by, and was rendered first aid; that after this she was taken to her home and treated by Dr. Lilly for about a week, and that after this Dr. Dehoff treated her for about three weeks; she was cut on the legs; that her injuries were very painful and she was home for over a month from her work; that she was a machine operator in a cotton duck mill and made on the average twenty dollars a week on piece work, that she does not know the exact time she was home, but it was over a month; that she was not able to work steadily after she went back to work, she was nervous at times and played out, and she had headaches all the time and was so nervous she could not work; that she went to Dr. Pearson and Dr. Anderson for her nerves; that she went to see Dr. Spear for her nerves, and he sent her to the other men; that there is something wrong with her nose now as she cannot breathe properly through it. * * *　That she is still unable to breathe properly through her nose; that she was able to breathe all right before the accident happened and never had any trou ble of this kind before; that the pieces of glass were taken out on the left side of her nose; that the injuries to her legs healed up, and are entirely well now; that she had pains in both knees and also in her chin for about a month, but that she does not have any pains there now; that the injury to her knee was in the front of her knee-cap; that in addition to this her whole body was bruised; * * * that she could not sleep at night or eat right and was hysterical at times; that she is still nervous and does not sleep well at night; that before the accident she weighed between one hundred and thirty-three and one hundred and thirty-five pounds, and since the accident she has lost about ten pounds, of which she has never gained any back; * * * that her nose still gives her a good bit of trouble and she is still very nervous, but that her legs are all right now." She also said that she was married on February 9th, 1926, and keeps house for a family of five persons. Following her testimony, Dr. W. J.

Kaston, who lived nearby, heard the crash of the collision, went at once to the scene of the accident, and administered "first aid" to Mrs. Opalecky, testified that when he first saw her, she was quite severely hurt and bleeding very freely from lacerations of the mouth. Dr. B. A. Lillich, who followed Dr. Kasten on the witness stand, said that he had examined her on November 4th and 5th, 1925, and that at that time she had cuts on her nose and other parts of her body, that she was nervous and suffering from shock, that she complained of her respiration, "breathing through her nose," and he advised her to see a specialist. She did go to see Dr. George W. Dehoff, who examined her first on November 13th, 1924, and continued to treat her until December 7th, 1924, and he said that when he discharged her, outside of her nervousness, she was cured. Describing her condition and treatment, Dr. Dehoff testified that when he first saw her she was very nervous and excited, she was bruised considerably, and she had a cut below each knee about a half inch and her upper lip and her left cheek cut about half an inch, and her left naris, the left part of the nose was torn; that he probed in there and found something hard and the night after he took out a piece of glass; that he took out two pieces of glass altogether; that the other piece of glass is mislaid, he thinks; that the piece of glass that is mislaid is about one-half or two-thirds the size of the piece exhibited; that he took it from the inside of the left naris, the inside of the left nose, and that the other piece was right behind it in the same place; that he thought there was a puncture of some kind in her nose, and that he treated her until the 7th of December, and that her condition when he discharged her was that she was very nervous and excited, but that the injuries were healed and the nose had healed up. That she has a scar here on the side of her face about half an inch, the upper lip, and the other came from the side about half an inch up in there (indicating); that the flare of the nostril was torn by the pieces of glass which had gone straight down in the flare of the nostril and torn open, and the glass was

down back, and it was jammed very tight, driven in by
force; that from what he knows as a medical man those in-
juries were very painful.

Following this testimony, Dr. Franklin B. Anderson was
called as an expert on behalf of the appellee. He did not see
Mrs. Opalecky until June 5th, 1925, and at that time he
found a scar one-half inch long on the upper lip just below
the left naris, and a scar on the inside of the left interior
naris, "where she told him that a piece of glass had been
removed," and that "the external nose showed a deflection
to the right, which was the result of the fracture of the in-
side bone," that the internal nose showed a "marked indenta-
tion of the entire inside septum to the left," and that that
condition interfered with her "proper nasal respiration," and
at that time she also "showed the beginning of a catarrhal
condition, that in most of these catarrhal conditions of the
middle ear, they are due to some deflection or nasal obstruc-
tion, some deflection of the septum or nasal obstruction,
that as far as he could find out the catarrhal condition was
the result of the deflection which he found." He was then
asked this question: "She testified she was thrown bodily out
of a machine on November 4th, 1924, and struck her face
on the ground; were the injuries that you saw to her nose
such as could be the probable and natural result of injuries
such as that, the striking of her face against the ground?"
The court overruled an objection to that question, and that
ruling is the subject of the first exception. Since the answer
to that question could not possibly have prejudiced the ap-
pellant, it is unnecessary to consider the formal objections
urged against it, but it is sufficient to say that we find no
reversible error in the ruling.

The witness was then asked: "She has testified that she
has a great deal of difficulty in breathing, particularly she
has difficulty in sleeping at night because she cannot breathe
properly; can you say whether or not that is the natural
and probable result of the condition that you found?" An
objection to that question was also overruled and that ruling

is the subject of the second exception. It is said that that question is improper because there was no testimony that appellee had difficulty in sleeping at night "because" she could not breathe properly. That criticism is just, because while there was testimony that she had difficulty in sleeping, and that she could not breathe properly, no one had said that her sleeplessness was caused by her difficulty in breathing, and the question, because it assumed that fact, was bad, and should not have been allowed. But the appellant was not injured by the ruling, because the answer to the question ignored that assumption.

The witness was then asked: "The lady has testified that she has from time to time bleeding from the nostrils and that she has had this bleeding ever since this accident and never had it before; is that or not a natural and probable result of injuries such as you found and the condition such as you found?" Appellant objected to that question on the ground that the "witness had not so testified," whereupon Dr. Anderson was then temporarily withdrawn and Mrs. Opalecky recalled, and permitted to testify that after the accident and down to the time of the trial her nose would bleed "real bad" sometimes for five or ten minutes, and that these attacks would occur at intervals of two or three weeks. The appellant then moved to strike out this testimony, which motion was overruled, and that ruling is the subject of the third exception. The testimony itself was relevant and material, and the order in which it was given was within the discretion of the trial court. And since the record discloses no abuse of that discretion, it follows that there was no error in that ruling.

After that testimony had been given, Dr. Anderson was recalled, and asked this question: "In view of the testimony that Mrs. Opalecky has had and still has, from time to time, bleeding of the nose lasting five minutes in the manner as you have just heard her testify, occurring two or three weeks apart, will you say whether or not that is a natural or probable result of injuries such as she received and of the con-

dition such as you found existed in her nostrils?" An objection to that question was also overruled and that ruling is the subject of the fourth exception. But since the court on motion struck out the answer to the question, appellant concedes that he could not have been injured by the ruling, and it need not therefore be considered.

As has been stated, Dr. Anderson described rather fully the condition in which he found Mrs. Opalecky when he examined her in June, 1925, and in the course of his testimony he said he found a catarrhal condition, and intimated, although he did not say so in so many words, that she had a catarrhal condition in the "middle ear," and, apparently in connection with that testimony, much of which was brought out on cross-examination, he was asked whether the catarrhal condition which he found was due to the condition of her nose. An objection to that question was overruled, and that ruling is the subject of the fifth exception. The inquiry was relevant, and under the circumstances, natural and proper, and while the form of the question was bad, no objection to it on that ground was made below, and that objection cannot therefore be considered by this court.

Dr. Irving J. Spear, a specialist in nervous and mental diseases, examined Mrs. Opalecky on June 4th, 1925, and he found "her physically in fairly good shape; he found nothing wrong with her lungs or general bodily nutrition; he found she was nervous and her hands bluish and cold and her hands were trembling and she appeared depressed and anxious. She is what is known as emotional, on the verge of tears most of the time. That she seemed to have some little difficulty in remembering and giving him the facts of the case, although she had no mental disturbance and got out everything fairly well; that she was what he calls a hysterical nervous woman; and that in addition to this he found her septum was deviated a little to the left and she had scars on her face and on her legs, and she had difficulty in breathing." After describing her condition, as we have stated it, he was asked: "Miss

Heflin testified that on November 4th she was thrown from an automobile out on the Reisterstown Road and injured, cut across both knees and injured about the legs and body and face and nose, that she has lost ten pounds in weight following that injury, which she has not regained. Can you tell us whether or not the condition in which you found her was the natural and probable result of the injuries she sustained"? An objection to that question was overruled and the witness answered: "If the statement she made to me that she was always well and self-controlled, active and happy before the injury is correct, and she was exposed to a fright or a shock of an injury, and subsequently she was in the condition I found her in, I would think that was a natural and logical sequence of her injury." The appellant then moved to strike out that answer, which motion was overruled, and those rulings are the subject of the sixth and seventh exceptions.

The apparent purpose of the question was to show that the nervous hysterical condition of Mrs. Opalecky at the time the witness examined her could have resulted from the injuries she suffered in the accident. But he had no personal knowledge of the nature or extent of the injuries she received at that time, because he did not examine her until some seven months after the accident happened, and any opinion of his, therefore, given in answer to that question, must necessarily have been based upon the hypothetical facts set up by it. The question should for that reason have stated all the facts which had a direct and essential relation to the matter upon which the witness was asked to express an opinion. It is true that this Court in *Williams v. State,* 64 Md. 392, said that it was "wholly unnecessary" in framing a hypothetical question to refer to "all the evidence," but in the *Berry Will Case,* 93 Md. 570, the Court, in speaking of the form of such a question, quoting in part from *Barber's Appeal,* 63 Conn. 393, said: "While such a question may not be improper because it included only a part of the facts in evidence, it would be so if, by reason of omission, it manifestly failed to present facts which it did include in their just and true rela-

tion, and caused them to appear in one that was untrue and unjust. *Barber's Appeal,* 63 Conn. 393, 22 L. R. A. 90. It is perfectly self-evident that a question which assumes as one of its postulates the very thing which it is propounded to prove is essentially inadmissible." And in *Miller v. Leib,* 109 Md. 422, in referring to *Williams v. State, supra,* it was said: "It has been held by this Court in several cases that it is not always necessary in framing a hypothetical question to be put to a medical expert to refer to all of the evidence upon the subject. *Williams v. State,* 64 Md. 384; *United Railways v. Seymour,* 92 Md. 431. It has, however, since those cases been held by us that it is faulty in framing a hypothetical question for a medical expert to give a wrong coloring to facts by isolating a particular fact and withholding other facts which bear directly upon the one so segregated. *Berry Will Case,* 93 Md. 572." Following that case it was held in *Northern Central R. Co. v. Green,* 112 Md. 505, that "a hypothetical question must embrace every material element of the hypothesis founded upon the evidence, and it must not import into the question any element not founded upon the evidence in the case. If it offends in either respect it is defective and it is error to permit such a question to be answered, and if inadvertently admitted over an objection, it is error to refuse a motion to strike out the answer." And later in *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 246, this Court, in an opinion filed by Judge Urner, referring to the proper form and elements of such a question, said: "This statement tended, without design but in actual effect, to exaggerate the real conditions. There was an omission to mention the fact that the plaintiff was able to leave the hospital four days after the accident and to resume her regular work as a stenographer about six weeks later. This circumstance might not have affected the opinion expressed that the hemorrhages were caused by the injuries received in the accident, but the interrogatories by which the opinions were elicited should have stated more fully and conservatively the testimony upon which they were to be partly founded. The rule as to the proper form and elements of hypothetical questions

was not sufficiently observed. *Northern Central R. Co. v. Green,* 112 Md. 487; *Miller v. Leib,* 109 Md. 414; *Grill v. O'Dell,* 113 Md. 625."

Applying the rule established by those cases to the question involved in this exception, it was in our opinion improper and should not have been allowed. First because it asked the witness to say in so many words whether the condition in which he found Mrs. Opalecky was caused by her injuries, but it omitted facts proved in the case, which must have had a vital and important influence in determining his answer to it. That is to say, the witness was told that Mrs. Opalecky, then Miss Heflin, was on "November 4th" thrown from an automobile on the Reisterstown Road and injured, "cut across both knees, and injured about the legs and body and face and nose" and that she had "lost ten pounds in weight, following the injury, which she has not regained." But he was not told that she had returned to her occupation as a factory employee about a month after the accident, nor that on December 7th, 1924, her wounds had healed up, and she was discharged by her physician as "cured" except for her nervousness, nor that she was married in February, 1926, and that she kept house for a family of five persons, nor was he given any but the meagre description of her injuries which we have quoted. So that the question really amounted to nothing more than stating to the witness that the appellee had been injured in November, 1924, and asking him to say whether those injuries, of which he knew nothing, naturally and probably caused the nervous and hysterical condition in which he found her in June, 1925, without reference to facts in evidence essential to the formation of any intelligent opinion concerning any causal connection between the injuries which she suffered in November, 1924, and the nervous condition in which witness found her in June, 1925. Such a question did not ask for the opinion of the witness upon the likely and probable consequences of known and definite injuries, but rather for a mere guess or speculation. The question was objectionable too because of its technical form. Such questions are usually and properly asked in one of two ways.

One is where the evidence is uncontradicted and the witness has heard or read it. In such a case he is asked to express an opinion predicated upon the assumption that the evidence thus known to him is true. The other way is to state to the witness such facts as are essential to the formation of a fair and intelligent opinion, ask him to assume the truth of the facts so stated, and to express an opinion upon them. Neither of these courses was adopted here, for such facts as are stated in the question are not connected in any way with the interrogative part of it, but the question is separated into two separate, distinct, and independent parts, which have no apparent relation to each other. For these reasons, in our opinion, the objection to this question should have been sustained.

But it cannot be said that the appellant was injured by this ruling, because in answering the question the witness disregarded its statement of fact, but based his opinion upon the statement made to him by Mrs. Opalecky, which was in without objection, and upon his observation of her. Nor can we say that there was reversible error in refusing to strike out the answer of the witness to that question. It was not evidence and should have been stricken out, but, in or out, it was harmless, and it would be trifling with the law to reverse a judgment in a case which has been fully and fairly tried for so trivial an error. The witness said, in effect, that if the plaintiff was well and happy before the accident, and nervous and unhappy after the accident, he would naturally think that the accident caused her condition. It is true that it did not require any unusual skill or experience to arrive at that conclusion, and it was the sort of guess which the average man would have likely made himself, but for that very reason it is not likely that it injured the appellant before the jury.

The twelfth exception deals with the court's disposition of the prayers. The plaintiff offered five prayers, all of which were granted. No objection was made in this court to her first, second and fourth prayers, and they will be passed without comment. Appellant, however, does object

to plaintiff's third prayer, because it permitted the jury to find their verdict against the appellant alone, without requiring them first to find that Nicodemus in no way contributed to the accident which caused the injuries of which plaintiff complained. But the action was in tort, and if the jury believed that the negligence of Gordon was the direct and proximate cause of the accident, the plaintiff was entitled to a verdict against him, regardless of whether Nicodemus contributed to it. She may have believed, as the jury did, that on the facts she was not entitled to a verdict against Nicodemus, and we know of no rule which would prevent her having a judgment against any one of two or more joint tort feasors, because she did not also proceed against the others, but on the contrary the rule is that one may proceed against any one of several joint tort feasors regardless of the others.

Appellant also specially objected to the plaintiff's fifth, or damage prayer, on the ground that there was no evidence in the case legally sufficient to show that the plaintiff was permanently injured, or that her injuries disabled her to any extent from engaging in those business pursuits and housewifely duties for which she would otherwise have been qualified. But there is evidence in the case that, as a result of the accident, her nose was fractured, that in consequence thereof her breathing was obstructed, that such obstruction induced a catarrhal condition and affects her general comfort, that her wounds left permanent scars, and that she is still nervous and cannot sleep well. That evidence was, we think, sufficient to support the hypothesis of the prayer, and the special exceptions to it were properly overruled. The prayer also instructed the jury that in estimating the damages they were to consider "how far" plaintiff's injuries were calculated to disable her from engaging in those business pursuits, etc., and appellant says that it is defective because it did not qualify the words "how far" by some such phrase as "at all." As drawn, the prayer does assume that to some extent at least the injuries complained of did disable the plaintiff, etc., and if the verdict had been for a nominal

amount, there would have been force in the objection, but as it was for substantial damages, it is apparent that that error did not injure the appellant.

Defendant offered six prayers of which the first and sixth were refused and the others modified and granted. Shortly after the accident, some one, apparently representing Gordon, presented to the several persons who were in his car at the time of the accident a paper stating that the accident was due to the negligence of Nicodemus, and not to the negligence of Gordon, and the plaintiff, with the others, signed it.

Appellant's first prayer announced that if the jury found that the plaintiff signed that paper, and that the accident happened as stated therein, "and that the defendant Gordon was not guilty of any negligence which directly contributed to said accident," the plaintiff could not recover. Naturally, if the defendant was not guilty of any negligence which contributed to the accident complained of, the plaintiff could not recover against him, but the prayer connected that self-evident proposition with a reference to the effect of her act in signing the statement, which may well have confused the jury and led them to believe that if she signed the statement she could not recover, and for that reason the court was justified in rejecting it. The paper was not a release, but an unsworn statement of a legal conclusion adopted by the plaintiff, and could not have had the effect of concluding the question of appellant's negligence, but was only relevant and material for the purpose of affecting the weight of the plaintiff's testimony. For, as said by Judge Parke in dealing with a similar statement in *Pearson v. Lakin,* 147 Md. 4: "While it is true that there is some conflict in the narrative of the appellee on the witness stand, and that, in a signed but unsworn statement after the accident, she said that the appellant was driving very slowly, about fifteen miles an hour, and that he had handled his automobile very carefully, yet the inconsistency and credibility of her testimony were for the jury, and her opinion and his are not controlling, if the evidence supported the inference of a greater

rate of speed and of appellant's negligence in the operation of his automobile." *Jones on Evidence,* par. 296; 22 *C. J.* 298.

The appellant's second and third prayers as offered were based upon the theory that if he was driving at an excessive rate of speed at the time of the accident, and the plaintiff knew that, but failed to protest or object against the "reckless manner" in which he was operating the automobile, that the jury might infer that she acquiesced therein, and if she did she was guilty of such contributory negligence as would bar her right to recover. The court modified that statement of the law by denying the jury the right to infer such acquiescence, unless the reckless driving continued long enough to give the plaintiff a reasonable opportunity to protest against it. The modification is consistent with common sense and is supported by authority and was in our opinion properly made. Appellant's fourth prayer embodied the proposition that, if plaintiff could have seen the approach of the truck in time to have warned Gordon of its presence "'in time for him to have stopped his automobile" and thereby have avoided the collision, she could not recover. The court modified the prayer by requiring the jury to further find that, when the truck was where she could see it, it was on the left hand side of the road. The prayer both as offered and modified was bad because, even if she were (which she was not) obliged at all times to keep a continuous lookout for approaching vehicles, her failure to do so under the circumstances, while it tended to prove negligence, was not conclusive proof thereof. *Hubby on Automobiles,* par. 824; *Kelly v. Huber Baking Co.,* 145 Md. 321. But although the prayer even as modified should not have been granted, appellant cannot complain, because, while the modification did not cure its inherent vice, it helped it, for while there may have been some reason for calling Gordon's attention to the fact that a car was approaching on the wrong side of the road, there was none for directing his attention to cars approaching on the right side of the road.

To the appellant's fifth prayer as offered the court added a definition of negligence in these words: "By 'negligence' is meant the lack of ordinary care such as would be exercised by an ordinary careful and prudent person upon similar circumstances." Appellant objects that "an ordinarily careful and prudent person does not exercise 'the lack of ordinary care.'" The language used by the court is a mere paraphrase of the definition adopted by this Court in *North. Cent. R. Co. v. State, etc.,* 29 Md. 438, and is not open to the verbal criticism which appellant makes. The word "lack," as used in the prayer, is equivalent to the words "want" or "absence," and the plain meaning and effect of the definition is that negligence is the failure to use that degree of care and caution which a person of ordinary care and prudence would have used under like circumstances, and that definition is consistent with the language used in *North. Cent. R. Co. v. State, supra.* No objection was made to the refusal of defendant's sixth prayer.

Finding no reversible error in any of the rulings reviewed, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*