JESSE FILLINGS *v.* MARY E. DIEHLMAN, ADMINISTRATRIX, ET AL.

[No. 15, January Term, 1935.]

*Decided March 7th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-
FUTT, PARKE, SLOAN, and JOHNSON, JJ.

*Harry K. Lott* and *Michael J. Manley,* with whom were
*Louis Silberstein* and *W. Gill Smith,* on the brief, for the
appellant.

*Roszel C. Thomsen,* with whom were *Walter L. Clark,
Clater W. Smith, James K. Cullen,* and *Jenifer & Jenifer,*
on the brief, for Mary E. Diehlman, appellee.

*Philip S. Ball,* with whom was *James J. Lindsay, Jr.,*
on the brief, for the receivers, appellees.

URNER, J., delivered the opinion of the Court.

When passing a large truck from the rear, on Han-
over Street in Baltimore City, the automobile in which
the plaintiff was riding as a guest of the owner, who was

driving it, skidded across the street in front of an electric railway car. A collision ensued, with resulting injuries to the plaintiff, for which he brought suit against the personal representative of the owner, who was killed in the accident, and the railway company, as joint defendants. On this appeal from a judgment on a directed verdict for both defendants, the only question to be determined is whether, as against both or either, the evidence was legally sufficient to require that the issue of negligence be submitted to the jury.

The accident happened about 5:45 o'clock p. m. on December 13th, 1933. The plaintiff was on the rear seat of the Packard car in which he was injured. It was testified by his wife, who was on the front seat, that: "Mr. Diehlman had been driving in the rear of that truck or large vehicle; that he pulled around it and tried to pass it; that he went around on the left side; that he increased the speed of the car; that he pulled abreast of it for a distance of about a quarter to a half a block; that it was drizzling rain; * * * that it was when he tried to cut in front of the bus that the automobile went to the other side of the road; that the only traffic coming south on Hanover Street was the street car; * * * that she could not exactly say that the automobile went directly across the street, or that it turned around or went straight across; she knows they went across the street, she imagines zigzagging; * * * that at the time the automobile zigzagged and went across to the wrong side of the road, the street car was, she guesses, 135 to 150 feet away; * * * that the right-hand corner and back of the automobile were struck by the front of the street car"; that the automobile "went up on the pavement on the west side; that the front of the automobile was facing the street, turned completely around"; that Mr. Diehlman had been driving at a moderate speed, but increased it as he attempted to pass the truck.

The plaintiff's testimony was substantially in accord with that of his wife. He said that Mr. Diehlman "speeded up" the automobile in order to pass the truck, and

after driving abreast of it for at least half the length of a city block, "he tried to cut in the right side and he changed his mind, and by that the car went off the tracks," "going like it was out of control." It went across the south-bound track, he said, "like on a tangent * * * headed slightly north." "When the automobile went from the right side across to the left side of the street and was going on the south-bound car track," the street car, he thought, was "a quarter to a half of a city block," or "a hundred to a hundred and fifty feet" distant.

It appears from the testimony of both the plaintiff and his wife, the only witnesses who described the accident, that Mr. Diehlhman's effort to turn ahead of the truck was made on a curve of the street and railway tracks towards the right, where the left wheels of the automobile, which had been running in the space between the northbound rails, would have to cross the right rail at an acute angle. The evidence tends to prove that the attempt to make such a turn at an accelerated speed over the slippery rail, curving in the same direction, started the skidding movement of the automobile across the other track to the left side of the street. The question now to be considered is whether the evidence admits of an inference that the skidding resulted from a failure to exercise due care in the operation of the automobile under the described conditions.

It is conceded, and indisputable, that the skidding of an automobile is not in itself sufficient to justify an inference of negligent operation. See numerous cases cited in 58 *A. L. R.* 266; 64 *A. L. R.* 261. But such an inference is permissible when the skidding results from the driver's negligent disregard of conditions by which such a risk is created or increased. *Huddy's Encyclopedia of Automobile Law* (9th Ed.) vol. 3-4, pp. 121, 176; *Paolini v. Western Mill & Lumber Corp.*, 165 Md. 45, 56, 166 A. 609. In 1 *Blashfield's Cyclopedia of Automobile Law*, p. 268, it is said: "The liability to accident because of the skidding of an automobile is one of the contingencies of travel by such a vehicle, which a driver must guard

against in the exercise of ordinary care when going at a fairly rapid rate around curves or corners, or obstructions, or on slippery pavements. * * * "

In *Williams v. Holbrook,* 216 Mass. 239, 103 N. E. 633, where a boy on a sidewalk was struck and killed by a skidding automobile, the question as to the driver's negligence was held to be for the jury; there being evidence that in turning out of a wet car track he increased the speed of the car. It was held in *Loftus v. Pelletier,* 223 Mass. 63, 111 N. E. 712, 713, that it was "a question for the jury whether the skidding was caused by the defendant's negligence in driving at a speed of more than thirty miles an hour in going around a sharp curve when the crowned surface of the road was loose and wet." In *Butner v. Whitlow,* 201 N. C. 749, 161 S. E. 389, the court sustained the legal sufficiency of evidence that, while the driver of an automobile, running at a speed of thirty-five to forty miles an hour, was looking to his right, talking to his wife, and glancing down at the floor, the car "eased over almost to the edge of the hard surface on the left," and, when he looked "back and saw that the automobile was almost off the road, he pulled the steering wheel around to the right," when it skidded across the wet road and against an embankment. In *Williamson v. Clark,* 103 Vt. 288, 153 A. 448, the skidding of a truck into the path of an on-coming car resulted from the sudden application of brakes by the truck driver to avoid collision with another truck which he was following closely. Evidence to that effect was held sufficient to entitle the plaintiff to have the case submitted to the jury. In *Story v. People's Motorbus Co.,* 327 Mo. 719, 37 S. W. (2d) 898, a passenger on a motorbus was injured when, according to testimony in the record, which was held legally sufficient to prove negligence, the bus swerved and skidded around a truck it was following, on an ice-bound street and on a down grade, at such a speed and so closely as not to be in proper control when the truck stopped to make a turn. Many other illustrative cases are collected in the *A. L. R.* annotations already cited.

In this case our consideration of the testimony on behalf of the plaintiff has brought us to the conclusion that the issue as to want of due care in the operation of the automobile in which he was a passenger should have been submitted to the jury for determination. An inference as to want of due care on the part of the driver could, in our judgment, be rationally drawn from the evidence tending to prove that he disregarded the danger of skidding, when, after increasing the speed of his automobile in order to drive by and ahead of the truck, and after running abreast of it for half a block or more, he turned the left wheels of the car obliquely against a slippery street car rail curving to the right, and thus endeavored to complete the passing movement. It could not be judicially declared that the automobile was in fact being carefully driven when the skidding began, and we think an inference to the contrary was legally permissible.

In our opinion, there was no legally adequate proof of negligence on the part of the motorman operating the street car which collided with the automobile. It could not be inferred from the evidence that the motorman could have averted a collision with the automobile after he became chargeable with knowledge that there was danger of such an accident. *Merrick v. United Rys. & Electric Co.*, 163 Md. 641, 163 A. 816; *Pennsylvania R. Co. v. Simmons*, 159 Md. 114, 150 A. 263; *Watson v. Storrs*, 167 Md., 175 A. 263. If, as the testimony for the plaintiff indicates, the street car was approximately 135 feet away when the automobile started to skid diagonally across the track, it does not appear to what extent that distance had been reduced when it should have become apparent that the continuously moving automobile would not pass beyond the track in safety. There was no proof as to the speed of the street car, nor as to the ability of the motorman to stop it, if running at a lawful speed, after he should have realized that a collision might occur. The essential elements for an inference of negligence on his part were not proved in

the case, and could not be supplied by conjecture as a basis for the submission of such a question to the jury.

> *Judgment affirmed as to the receivers for the United Railways & Electric Company, and reversed, with the award of a new trial, as to Mary E. Diehlman, administratrix, the costs to be paid by the appellant and the administratrix equally.*