BRUMAGE *v.* BLUBAUGH

[No. 93, October Term, 1953.]

*Decided February 12, 1954.*

Before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND. JJ.

Submitted on brief by *William H. Geppert, Lewis R. Jones* and *Jones & Jones* for the appellant.

Submitted on brief by *Edward J. Ryan* and *William L. Wilson, Jr.*, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment in the amount of $430.00 and costs, for damages to an automobile entered on a verdict by a jury.

Appellant, Henry Brumage, contends that the trial judge was in error in overruling his motion for a directed verdict and for a judgment *non obstante verdicto* because there was no evidence establishing primary negligence on the part of the appellant. We will therefore recite the evidence in a light most favorable to the appellee, James A. Blubaugh.

The appellee, who was traveling from Westernport, Maryland, to Barton, testified as follows: He had driven his automobile over a hill and was on a "practically level" road which was straight for a quarter of a mile. When asked about the condition of the road, he said: "It was snowing a little." The road, at the place where the accident happened, was not icy. He said: "I guess it was a little slippery. There was a little snow on the road." He said he did not see any ice there. As he came down the hill he saw two cars blocking the road with their lights on, one on each side of the road. He drove to the right hand side, with his lights lit, with two wheels on the dirt, and parked where the road was practically eighteen or twenty feet wide. After he had been parked about a minute he saw, through his rear vision mirror, appellant's truck, with its lights lit, come up and start to pass him, the road being wide enough for the truck to pass. When appellant saw the road blocked, he put on his brakes. The rear of appellant's truck hit appellee's automobile at the left rear door, mashed and tore the top and left rear quarter panel. The truck then hit the guard rail, almost hit

appellee's automobile again and went over into the ditch. The repairs cost the appellee $568.00. Appellee did not know there was to be an accident until his automobile was hit. After the collision, appellant told the appellee: "He would see that it was fixed—told me to get it fixed, and he would see that it was paid for." Mrs. Blubaugh, appellee's wife, who was in the automobile with her husband and young son, gave testimony similar to that of her husband and also said: "It had been snowing a little bit; and it was just blowing all over the road." She said there was no ice on the road. Where they stopped their automobile the road was level. When asked how far back she could see in the direction of Westernport, she replied: "About 200 feet, I guess."

The only testimony as to the speed of appellant's truck was that of the appellant himself, who said he was driving his Ford truck between 25 and 30 miles an hour. When asked whether he told the appellee that the accident was his fault, appellant replied: "Well, I more or less thought it was my fault at the time. I don't know that I said it was my fault. I had nobody to advise me." Before he came to the scene of the accident, the road was bare. The cars blocking the road "had to put on chains to come out". At the place of the accident snow was on the road and it had formed ice. At the time he thought the accident was his fault. He admitted that he had no chains on his truck. The first car he saw was that of the appellee, at a distance of about 200 feet, off the side of the road with enough room for him to pass. He then saw the two cars blocking the road at a distance of about 150 feet. He put on his brakes and hit the fence and Mr. Blubaugh's automobile.

Of course, it has been repeatedly held by this Court that a case will not be withdrawn from the jury for the lack of legally sufficient evidence if there is any evidence, however slight, competent, pertinent, and coming from a legal source, which is legally sufficient as tending to

prove negligence. *Yellow Cab Co. v. Henderson,* 183 Md. 546, 549, and cases there cited.

In *Marshall v. Sellers,* 188 Md. 508, the appellee, Sellers, ran into the truck of the appellant, Marshall, which had been parked unlighted on a highway. Marshall requested a directed verdict on the ground that Sellers was guilty of contributory negligence as a matter of law in colliding with the unlighted truck. This Court said in that case: "Some of the courts of this country have adopted the English rule that a driver must have his car under such control as to be able to stop within his range of vision, even though visibility may be affected by fog or other conditions, and if he fails to operate his automobile in such a manner that he cannot stop it before striking the obstruction, he is guilty of contributory negligence as a matter of law. In Pennsylvania, for example, it was held in *Simrell v. Eschenbach,* 303 Pa. 156, 154 A. 369, that a motorist was guilty of contributory negligence as a matter of law when he operated his automobile at night at the rate of 25 miles per hour and ran into a truck, which was parked on the road without lights, and which he could not avoid hitting because he could not see it on account of a storm until he was within 20 feet of it. But we have held that this rule is too broad, because it fails to consider the fact that a person driving at night has at least some right to assume that the road ahead is safe for travel unless a danger is indicated by a red light, and also the fact that visibility is different in different atmospheric conditions. *Frederick & Baltimore Transportation Co. v. Mumford,* 154 Md. 8, 139 A. 541; *Robert v. Wells,* 170 Md. 367, 184 A. 923; *Morehouse v. City of Everett,* 141 Wash. 399, 252 P. 157, 160, 58 A. L. R. 1482. We think the determination of whether an automobile driver should have seen an obstruction at night is under many circumstances a question for the jury. Each case should be considered in the light of its own peculiar facts and circumstances, the test being what an ordinarily prudent person would have done under the circumstances as they

existed at the time of the accident."

In *Wolfe v. State,* 173 Md. 103, Wolfe, the defendant, admitted that at the time of the accident, he was driving at a speed of from forty to forty-five miles an hour and, as he approached a turn, his car skidded on a wet road directly in the path of the other car. It was said in that case: "Skidding is not in itself, and without more, evidence of negligence (5 *Amer. Jurisprudence* 654; *Fillings v. Diehlman,* 168 Md. 306, 309, 177 A. 400), nor is mere speed, certainly within lawful limits, apart from the circumstances in connection with which it is considered, ordinarily evidence of negligence. 5 *Am. Jur.* 645 *et seq.* Both take color and significance from the facts and circumstances which attend them, and either may be evidence of negligence. Skidding may be evidence of negligence if it appears that it was caused by a failure to take reasonable precaution to avoid it, when the conditions at the time made such a result probable in the absence of such precaution. Speed may be evidence of negligence where it appears that, under the circumstances, it was likely to endanger others who were in the exercise of due care. *Fillings v. Diehlman, supra;* 5 Am. Jur. 645, 654; *Berry on Automobiles,* secs. 247, 183, 226. The modern automobile, because of its speed, weight, power, and design, and the operation of physical laws, is peculiarly subject to the danger of uncontrollable and erratic deviations from its ordinary course. Since it is held on its course by the traction between its tires and the road surface, whatever lessens that traction makes it more difficult to control, and increases the hazard of its skidding. That tendency, because of the power, weight, and potential speed of such machines, carries a constant threat to all users of modern highways, and imposes upon the drivers of automobiles the duty of exercising at all times care and vigilance to avoid increasing the danger of skidding, created by any condition of the road surface which lessens the traction or grip of the machine on it, by adapting the management of the car to the conditions. It is a matter of

common knowledge, chargeable to every one who operates an automobile on a public highway, that the danger of skidding on a wet slippery surface increases as the speed increases. And not only does the probability of skidding increase under such conditions as the speed increases, but the seriousness of the possible consequences to other users of the highway increases proportionately. It is also obvious that any sudden swerving from a straight line by an automobile driven at high speed over a wet slippery street increases the probability of skidding, and that the driver is therefore under a constant duty to use all reasonable care to discover and avoid conditions which may require such a movement. *Fillings v. Diehlman, supra; Berry on Automobiles,* sec. 247; 5 *Am. Jur.* 654." See also *Stafford v. Zake,* 179 Md. 460, 462.

In *State v. Greaves,* 191 Md. 712, the defendant, while driving an automobile down Big Savage Mountain over a snowy road that had been cindered, when half way down the mountain disregarded a sign to descend in second gear when the road was wet and to use brakes only to save speed. He saw the deceased walking along the edge of the road and close to the bottom of the mountain. The car started to slide sideways just before he reached the deceased and, although the driver tried to straighten it out, the car turned completely around and went sideways off the highway and hit a telephone pole and the deceased, Whitaker. In that case the trial court permitted the jury to consider whether the death of Whitaker was the result of an unavoidable accident. It was said in that case: "The trial court said 'Unless the law is that every skid must be considered as due to negligence, it would seem proper to let the jury decide whether this was due to negligence or whether it was unavoidable under all the facts in this particular case.' The learned court did not look behind the skidding to what caused it. Mere skidding is not evidence of an unavoidable accident. In this case the facts do not tend to show that the appellee had his car under such control as was required of him under the conditions

under which he was traveling. Perhaps there was nothing the appellee could do when his car started to skid, but there was nothing to show that the car would have skidded had he obeyed the sign at the top of the mountain and kept his car in second gear all the way down. *Unless there is something in the evidence showing that this accident could not have been foreseen and prevented by vigilant care and attention an unavoidable accident prayer would lead to mere speculation.* The case is quite similar to the recent case of *Fogle v. Phillips*, 191 Md. 114, 60 A. 2d 198, where we held that there was no dispute about the facts, and assuming the truth of defendant's testimony, there was nothing from which the jury could conclude that the accident was unavoidable. In the instant case, the entire testimony about the skidding comes from the defendant himself. He states that half way down the mountain he took his car out of second gear, the road was snowy, although it had been cindered, that he could not tell how fast he was going when the car started to turn sideways and that he thought it was at a slushy place in the snow. This undisputed testimony does not give rise to any inference that the accident could not have been avoided by care exercised before the slushy place was reached. The jury should not have been allowed to guess about it. We think the twelfth prayer [which permitted the jury to consider whether the death of Whitaker was the result of an unavoidable accident] had no place in the case, and was erroneously granted." (Italics supplied).

In *Billmeyer v. State*, 192 Md. 419, Billmeyer was operating his automobile on a street in McCoole, Allegany County. The center of the road was dry or clear for three or four feet but there was a light coating of hard packed snow and ice along the sides. A Mr. Whiteman was crossing the street, not at a street crossing. Billmeyer applied the brakes and his car skidded to the left side and hit Mr. Whiteman. This Court said in that case: "It is difficult to find any evidence of primary negligence on the part of Billmeyer. His rate of speed

was not excessive, and the failure to have chains on his car would not seem to support an inference of negligence under the circumstances. It is a matter of common knowledge that chains do not prevent skidding upon icy surfaces, although they afford better traction in soft or deep snow. If we assume that Billmeyer's car did skid, and not merely swerve, in the sudden emergency, that fact alone would not be evidence of negligence. *Stafford v. Zake,* 179 Md. 460, 462, 20 A. 2d 144; *Wolfe v. State,* 173 Md. 103, 116, 194 A. 832. Compare *Burhans v. Burhans,* 159 Md. 370, 150 A. 795. It would only be significant in connection with antecedent conduct, such as excessive speed, or disregard of normal precautions against foreseeable dangers. *State v. Greaves,* 191 Md. 712, 718-719, 62 A. 2d 630, 633; *Fillings v. Diehlman,* 168 Md. 306, 309, 177 A. 400."

From the above authorities it is clear that skidding alone is not evidence of negligence. The question is whether this Court should rule as a matter of law that the evidence, most favorable to the appellee, showed as a matter of law that the accident could not have been prevented by vigilant care and attention of the appellant and therefore was unavoidable.

Looking at the evidence in a light most favorable to the appellee, a small amount of snow was falling and blowing all over the road, which was "a little slippery". As appellee came down the hill the road was level and straight for a quarter of a mile. He saw the cars blocking the road. He parked on the side of the road with two wheels on the dirt, with his lights lit. Appellant was traveling down the road, according to his own testimony, at a speed of from 25 to 30 miles an hour, where the maximum speed limit is 50 miles an hour. Code, 1951, Art. 66½, Sec. 176(d). Although appellant saw appellee's car at a distance of 200 feet and the blocking cars at a distance of 150 feet, appellant did not apply his brakes until he started to pass appellee's car, where the road was slippery. He not only hit appellee's car once, inflicting considerable damage to it, but after strik-

ing it, slid across the road, hit a guard rail, came back across the road and almost hit appellee's car again before going into the ditch. We could hardly say, as a matter of law, from this evidence that appellant could not have prevented the accident by vigilant care and attention and that it was unavoidable. A jury might find in this case that, driving a truck on a highway, where snow is blowing across the road, appellant was negligent in proceeding, without chains, at a speed of from 25 to 30 miles an hour.

Appellant here admitted that he would see that appellee's car was fixed and at the time of the accident he thought it was his fault. In *Gordon v. Opalecky,* 152 Md. 536, the plaintiff signed a written statement that the accident was not due to the negligence of the defendant. This statement was admitted in evidence. This Court there said: "The paper was not a release, but an unsworn statement of a legal conclusion adopted by the plaintiff, and could not have had the effect of concluding the question of appellant's negligence, but was only relevant and material for the purpose of affecting the weight of the plaintiff's testimony." In *Potts v. Armour & Co.,* 183 Md. 483, 491, 492, it was said: "Of course, a definite promise made by a person involved in an accident to pay for damages resulting from the accident may constitute an implied admission of fault." See also *Billotti v. Saval,* 165 Md. 563, 566. Some cases in the United States, other than Maryland, indicate that an admission of fault or liability amounts only to a conclusion of law having no probative force. Among these are *Mathes v. Schwing,* (La. 1929), 125 So. 121; *Robb v. Pike,* (Fla. 1935), 161 So. 732; *McClusky v. Duncan,* (Ala. 1927), 113 So. 250. See also *Morris, Admissions and the Negligence Issue,* 29 Tex. L. Rev. 407, 433-436. Other cases indicate that such admissions of fault or liability are equal to admissions of fact, having probative force and affecting the weight of the admitter's testimony. Among these are *Altman v. Boston & N. St. Ry. Co.* (N. H. 1910), 78 A. 616; *McMillan v.*

154

*Gage,* (Tex. 1942), 165 S. W. 2d 754; *Runyan v. Marceline Coal & Mining Co.,* (Mo. App. 1915), 172 S. W. 1165; *Zandan v. Radner,* (Mass. 1922), 136 N. E. 387; *Cleveland v. Reasby,* (N. H. 1943), 33 A. 2d 554. See also Article by Professor Morgan in 12 Wash. L. Rev., page 184.

The statement by the appellant here affected the weight of his evidence and was proper for the consideration of the jury. We are of opinion that the trial judge was correct in overruling the appellant's motion for a directed verdict and a judgment *N. O. V.*

*Judgment affirmed, with costs.*