A. LOUELLA BURHANS *v.* EDNA MAY BURHANS.

A. LOUELLA BURHANS *v.* DORA E. BURHANS.
[Nos. 46, 47, April Term, 1930.]

*Decided June 12th, 1930.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUT, DIGGES, PARKE, and SLOAN, JJ.

*Foster H. Fanseen,* with whom was *Robert H. McCauley* on the brief, for the appellant.

*Oswald & Oswald,* submitting on brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, A. Louella Burhans, with her three sisters, Edna May, Dora E., and Elizabeth Burhans, on July 24th, 1927, left their home at Hagerstown for Braddock Heights in an automobile owned and driven by the appellant. Before reaching the latter place the car in which they were riding struck a culvert, causing the car to turn over, throwing the occupants therefrom. Elizabeth was killed and the others injured. Edna May and Dora E. each sued their sister Louella for the respective injuries sustained by them, and each recovered a judgment against her. From each of these judgments Louella Burhans has appealed to this court.

By agreement of counsel, the cases were tried together, and they are now before us in one record, and, as we gather

from it, the instructions sought and the rulings thereon are the same in both cases.

At the conclusion of all the evidence, a prayer, asking for a directed verdict for the defendant because no evidence was produced, in the case legally sufficient to entitle the plaintiff to recover, was offered and rejected.

In passing upon this prayer, it becomes necessary for us to state at some length the evidence offered as tending to show the negligence of the defendant.

The appellee Edna May Burhans testified that she, at the time of the accident, was upon the front seat of the car, beside her sister, the appellant, who, she said, was a careful driver. Her other sisters were upon the rear seat. That immediately preceding the accident the car was moving at a speed between twenty and thirty miles an hour, and was, at the time, going down a steep hill. That "about a hundred feet ahead of the car there was a dog coming out of a side road, and this side road was at the foot of the hill. I saw the dog, and Miss Louella Burhans saw the dog at the same time, I judge. I said to her in a conversational tone, to watch out for the dog. After we traveled down the pike she suddenly turned her car to the right and put her brakes on so hard that it caused the car to skid. It turned around two or three times and then at the bottom of the hill it hit this culvert and upset, and we were all thrown out and all injured, and one sister was killed." Before the accident, the car, she said, was in good condition, the road dry, and the brakes "worked all right." Upon cross-examination she was asked: "Did you continue watching the dog after you spoke to Miss Louella? Ans. Things happened very quickly then, I don't know. Q. You don't know whether you were still watching the dog or not after you talked to her and she drove on down the hill, to the bottom of the hill? A. I don't know anything about the dog after that. I saw the dog and she saw the dog. Where the dog went I don't know. Q. Do you know whether the dog ran out in front of the car? A. I don't know. Q. What kind of a dog was it? A. A large shepherd dog. Q. You don't know just how far she did drive after you spoke

to her? A. She drove a little ways down the pike after I spoke, and she suddenly jammed her brakes on and turned the car."

The appellant, who was the driver of the car at the time, testified that she had been driving a car for five years, a seven-passenger Studebaker, and she with her sisters went out riding whenever they had time. She was then asked to describe the happenings as they occurred on that day? A. "We were on our way to Braddock * * * and as we neared Bolivar, over the brow of the hill, I saw a dog coming from the side of the road. My first idea was whether the dog would go up in front of the houses or come toward the middle of the road. I did not want to hit the dog. I turned my car a little more to the right rather sharply, put on my brakes, both brakes as I neared the dog. Q. What happened then? A. The car was wrecked, we were all badly injured. The car turned around and hit the culvert. Q. Did the car skid? A. I suppose it did, yes. Q. Do you recall the car turning around in the road? A. I don't remember the car turning so much. I remember, when I put my brakes on tight, that the car swerved. I don't remember much after that until I was being pulled out from the wreck." She could not say whether the car turned around in the road. That she usually drove from thirty to thirty-five miles an hour. On that day she perhaps was driving a little slower and was to the right of the center of the road. Her idea in applying the brakes was to cause the car to go slower, but not to stop it completely. Her sister said to her, "Lou, don't hit the dog. * * * Her making that remark had nothing to do with my applying the brakes. Q. After she made that remark, how far did you go before you applied the brakes? A. A short distance, I could not tell. Enough so that the dog started to go toward the center of the road. I was conscious of that." On cross-examination she was asked, "What caused the car to swerve or skid at this particular time? A. I suppose I applied the brakes too quickly. Q. Did you or did you not turn your car to the right? A. Yes, I did; turned it sharply to the right quickly. Q. At the same time the brakes were applied? A.

I turned the car and applied the brakes at the same time, I think—I know. Q. You didn't strike the dog, did you? A. No."

The appellee Dora Burhans, who was upon the rear seat of the car, knew little of the happening of the accident and was not able to add anything to what was testified to by her sisters. The record discloses that the four sisters were all unmarried and lived together. The appellant, Louella Burhans, was the owner and proprietor of a millinery store in Hagerstown, and her sister Edna May was employed by her as clerk therein, at a salary of twenty dollars per week, both at the time of the accident and at the time of the trial. The sister Dora E. Burhans, aged sixty-three, kept and cared for the home where they lived.

The declaration in each of the cases alleges that the injuries sued for "were caused by the negligence of the defendant in driving, operating and managing" her automobile.

It was essential to plaintiffs' recovery that the evidence produced should show the negligence of the defendant, and if the evidence produced was so lacking in probity and force as to render it legally insufficient as tending to show the existence of such negligence, it should not have been submitted to the jury for its consideration.

It may well be asked, What is the evidence in this case tending to show the negligence of the defendant causing the injury complained of? The plaintiffs claim that such negligence may be found in the manner or way in which the defendant drove or operated her car in an effort to avoid hitting the dog, which was seen in the road only a short distance ahead of the car. The specific acts complained of were those stated by Edna May Burhans, that the defendant "suddenly turned her car to the right and put her brakes on so hard that it caused the car to skid," or, as she said on cross-examination, "she turned her car too sharply to the right and put her brakes on very hard and caused the car to skid, turn around * * * and hit this culvert and upset," or as stated by the defendant herself, "I turned my car a little

more to the right, rather sharply, put on my brakes, both brakes as I neared the dog."

If the defendant was guilty of negligence at all, it must be found in her acts above stated. The defendant, when at the top of a hill, saw a large shepherd dog a hundred feet away, coming from a side road out upon the road upon which she was driving. The dog was also seen by her sister, sitting beside her in the car, the danger with which they were threatened was apparent to both, for the sister said "don't hit the dog," while the defendant testified, "I didn't want to hit the dog, my thought was I might wreck my car if I hit the dog." With the dog only a short distance ahead of the car and it going down a steep hill, to avoid striking the dog, the defendant, as shown by the evidence, had to act quickly, which she said she did, and what she did was to turn her car quickly to the right and apply the brakes, with the view, as stated by her, of slowing down the car, both of which acts she regarded as necessary to avoid hitting the dog. If what she did was what an ordinarily prudent person would have done in a like perilous situation, she was not guilty of negligence. Because of the peril of the position in which she was placed by the presence of the dog in the road so near to her car, and the possible consequence resulting from a collision with it, she is not held to the same accuracy of judgment as is required of her under ordinary circumstances. And though a course of action other than that which she pursued might have been more judicious, she is not to be held liable for her error of judgment in pursuing the course she did, if, in doing so, she acted with such care and caution as ordinarily prudent persons would have exercised under the stress of like circumstances. 42 *Corpus Juris,* page 890, sec. 592; *Massie v. Barker,* 224 Mass. 470; *Leslie v. Catanzaro,* 272 Pa. 419. It may be that the injuries complained of resulted from the quick and sudden turn of the car and the application of the brakes, but it is not shown that the car was turned more quickly or suddenly than was necessary to avoid striking the dog, and the mere fact that the injuries resulted from the quick and sudden turning of the car, and the application of

the brakes, did not in itself show that the defendant was guilty of negligence, unless it be further shown that an ordinarily prudent person, in the perilous situation in which she was placed, would not have attempted to avoid the collision with the dog, or would not have done what she did in the operation of her car in an attempt to avoid striking the dog. There is certainly nothing in this evidence to show that she was negligent in attempting to avoid a collision with the dog, nor is it shown, we think, that she did anything in her attempt to avoid a collision with the dog that an ordinarily prudent person would not have done when suddenly placed in such perilous situation. Had she not attempted to avoid striking the dog, the consequences of hitting or running over it might have been even more disastrous than those following the course she pursued.

There was not, we think, evidence in this case legally sufficient to submit the question of the defendant's negligence to the consideration of the jury. Taking this view of the case, it becomes unnecessary for us to pass upon the other rulings of the court. The judgment in each of the cases will, therefore, be reversed without a new trial.

*Judgment in each case reversed, without a new trial; appellees to pay the costs.*