COASTAL TANK LINES, INC. *v.* CARROLL ET AL.
(Two Appeals in One Record)

[No. 162, October Term, 1953.]

140

*Decided June 25, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Jesse Slingluff, Jr.,* with whom were *Michael P. Crocker* and *Piper & Marbury* on the brief, for the appellant.

*Eugene A. Alexander, III,* for Gertrude Carroll.

*J. B. Randol Carroll,* with whom was *Charles Markell, Jr.,* on the brief, for Richard M. Carroll, to his own use and to the use of the Home Insurance Company.

HAMMOND, J., delivered the opinion of the Court.

A tractor-trailer, owned by Coastal Tank Lines, Inc., the appellant, ran off the Governor Ritchie Highway near the intersection of Ordnance Road, striking a house owned by Richard M. Carroll and insured by the Home Insurance Company. Gertrude Carroll, another appellee, was sitting in the house. The accident followed the sudden entry into the boulevard of a car, a convertible, which collided with a stake body truck proceeding down the Highway just ahead of the tractor-trailer. In one suit, the owner of the damaged house and his insurance company sued Coastal to recover the cost of repairs, and in another suit, Gertrude Carroll sued it to recover for the injuries which she suffered as a result of the accident. The cases were consolidated and tried together, and on a jury's answer to issues, finding Coastal negligent, judgments were entered which are appealed from here. The real contention of the appellant is that there was no evidence legally sufficient to establish that it was guilty of negligence and that the court should have directed a verdict on its timely motion, or should have entered a judgment notwithstanding the verdict.

The plaintiffs below first sued Coastal only. Coastal brought in, as third party defendants, the owner and driver of the automobile which came into the boulevard and the owner and driver of the stake body truck. Thereafter, the plaintiffs amended the declarations and joined these third parties as defendants. At the trial, plaintiffs produced a witness who had been a policeman on the Anne Arundel County force at the time of the accident, and in an effort to bring their case within the doctrine of *res ipsa loquitur*, attempted to limit his testimony to a description of the course the tractor-trailer had taken in leaving the road, as it knocked down a telephone pole and struck the house, and where it came to rest. He was not questioned as to the other two vehicles involved, although he did say in direct examination that: ". . . I can't exactly remember how I found Mr. Sesker's truck,

but the other gentleman was driving a car, I found it farther up the road, sitting in the middle of the road. I had all the people involved in the case together, . . ." Richard Carroll told of the damage to his house and the payment of the cost of repairs by the insurance company. It was agreed that if the jury found a verdict for Gertrude Carroll, the court should assess the damages and her testimony was limited to her injuries.

The court refused a motion for a directed verdict at the close of the plaintiffs' case, the Coastal put on its case. The driver of another Coastal tractor-trailer coming north, as the one involved in the accident was coming south, said that the convertible bound west on Ordnance Road stopped at the stop sign, and then suddenly came into the boulevard just as the stake body truck approached the intersection. His description was this: ". . . I seen this Gembecki car stopped for the stop sign, and it come right off, didn't wait for any traffic, and he cuts out across the Coastal Tank Lines truck which was driven by this fellow named Grymes south, cuts the stake body truck off, the stake body truck sideswiped the car and the Coastal Tank Lines driver cut to the right, and when he cuts to the right it is about a sixth or eighth inch curb there, the curb throwed him into the pole, he snapped the pole base off and ran into the corner of the house." The stake body truck, he said, was in the left or fast lane, some seventy-five feet ahead of the Coastal truck, which was in the right hand or slow lane. The stake body truck, in an effort to avoid the convertible, swung to the right in front of the Coastal truck. The convertible made an effort to cut in front of the stake body truck and get into the slow lane ahead of the Coastal truck. It got about two and a half feet over the middle line when it was struck on the right front fender by the stake body truck. The witness said the stake body truck: ". . . managed to get 25 or 50 feet ahead of the Coastal Tank Lines truck before this accident occurred." The convertible: ". . . stopped right at the point of impact." The witness said further that

the stake body truck was going about thirty-five miles an hour. There was no room to pass the convertible in the left hand lane, and the witnesses thought there was "good reasonable passing" to the right because the ditch on that side was asphalt paved for three or four feet.

The driver of the Coastal truck said that he attempted to go over the curb because there was not room left in the road proper to pass the convertible. He added that by hitting the curb at an angle, it: ". . . made me lose control of it by bouncing back and forth and hitting up against the telegraph pole." The driver of the stake body truck was also offered as a witness by Coastal. He said that he was going down the road ahead of the tractor-trailer at between thirty-five and forty miles an hour, and as he got near Ordnance Road, the convertible pulled in front of him and began to make his turn, and got just about halfway when, despite simultaneous efforts to stop and swing to the right, the left front of the stake body truck hit the right side—first the front and then the back—of the convertible. He added: ". . . I just hit his car and kind of slewed it off a little bit and I went on by." He said the impact occurred: ". . . About exactly opposite Ordnance Road." He pulled on down the road several hundred feet and stopped.

At the conclusion of the defendant's case, Richard Carroll was recalled in his own behalf and testified that it is two hundred feet from Ordnance Road to his house, that the telephone pole is thirty feet from his house, or one hundred seventy feet from Ordnance Road. There are two houses between Ordnance Road and his house.

The appellees argue that the doctrine of *res ipsa loquitur* applies, relying on the language of *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, that: "When a vehicle leaves a highway and crashes into a building, . . . the injured party may show the happening of the event and rest. In lieu of direct proof of negligence he may rely on the inference of negligence to be deduced from all the circumstances." The statement was dictum

in that case.    In *Shirks Motor Express v. Oxenham,* 204 Md. 626, we held the quoted language applicable, since the deviation of the vehicle from normal conduct constituted all of the attendant circumstances.

The statement is not applicable to the case before us for the reason that all of the facts which led up to and caused the injuries were known and testified to at the trial—all of the facts which either did or did not amount to negligence—so that the need for an inference vanished.   It is not necessary to decide whether the plaintiffs' testimony went far enough (when the ex-policeman testified as to "Mr. Sesker's truck" and the car of "the other gentleman" and the fact that he had "all the people involved in the case together") to show that: ". . . the injury complained of might have been caused either by the defendant's negligence or by the act of another for which the defendant was not responsible . . .", *State, use of Boznango v. Blumenthal-Kahn Electric Co.,* 162 Md. 84, 91, so that the doctrine of *res ipsa loquitur* would not operate.   It has been held in many cases that if it does go so far, the court will not apply the doctrine, for to do so would be: "To draw an inference of negligence from only a *part* of the attendant circumstances . . ." *Strasburger v. Vogel,* 103 Md. 85, 89.   See also *Klan v. Security Motors, Inc.,* 164 Md. 198, 200; *Surry Lumber Co. v. Zissett,* 150 Md. 494; *Hickory Transfer Co. v. Nezbed, supra.*

Nor is it necessary to decide whether a plaintiff who having sued one defendant amends his declaration to charge negligence to, and claim against, two other defendants who have been brought in as third parties, and who has secured full information by interrogatories, may ride to the jury on the doctrine of *res ipsa loquitur* by deliberately limiting the testimony to the vehicle owned by one defendant and treating the case as if no other vehicle were at all involved.   It has been said that:  "The justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstance that the principal evidence of the true cause of

the accident is accessible to the defendant, but inaccessible to the victim of the accident. The rule is not applied by the courts except where the facts and demands of justice make its application essential, depending upon the facts and circumstances in each particular case." *Potts v. Armour and Co.,* 183 Md. 483, 488. Other cases and the writers have recognized this limitation of the doctrine. *Goldman & Freiman Bottling Co., Inc. v. Sindell,* 140 Md. 488, 502; *Frenkil v. Johnson,* 175 Md. 592, 604; *Farinholt, Res Ipsa Loquitur,* 10 Md. Law Review, 337, 339; *Bohlen, Studies in the Law of Torts,* 644-645 (Note 13); *Harper on Torts,* Sec. 77.

We think that "the facts and the demands of justice" do not require that an inference be permitted to be drawn as a matter of right where all of the circumstances of the occurrence are shown by the testimony. *Bohlen,* in the work cited, at page 645, says: "Where a presumption is recognized because the power of producing evidence is exclusively in the opponent of him who has the burden of persuasion, in so far as it is recognized for the purpose of relieving him of a burden which is impossible for him to successfully bear, that purpose is satisfied when his opponent produces evidence of what actually took place." In *Strasburger v. Vogel, supra,* the Court, in referring to the drawing of an inference from a part only of the attendant circumstances, said at page 89 of 103 Md.: ". . . to exclude, in the mental process of deduction, a consideration of intervening, independent and efficient causes directly occasioning the injury . . . and not attributable to a defendant, would be to predicate actionable negligence of a condition or event which in fact did not produce the injury . . ." This was a case where the plaintiff produced the evidence, as we have noted earlier. In *Frenkil v. Johnson, supra,* where both sides offered testimony, the Court said at p. 605 of 175 Md.: "Nor is the rule applicable if it appears that the injury may have been caused by the independent negligence of the defendant or a third person, since, in such a situation, the plaintiff is not permitted to recover

until he excludes the independent neglect of the third party as the efficient and proximate cause of the injury. * * * So, if there is direct evidence of negligence, and all the facts causing the injury are known and testified to by witnesses at the trial, the condition for the inference does not exist." In *Tittlebaum v. Pennsylvania R. Co.*, 167 Md. 397, where evidence was introduced by both plaintiff and defendant (the plaintiff proving that a window broke across the aisle from her in a car of the train in which she was riding, and the defendant proving that a boy had thrown a stone at the window) the Court held that the doctrine of *res ipsa loquitur* did not apply. It adopted this statement of the law: " 'So also if it appears that the accident might have been the result of the wrongful acts or negligence of third persons * * * a *prima facie* case is not made out.' " It used this language from *State, use of Boznango v. Blumenthal-Kahn Electric Co.*, *supra*, : " 'If, by the evidence, * * * it was disclosed that the injury complained of might have been caused either by the defendant's negligence or by the act of another for which the defendant was not responsible then the doctrine would not apply.' " The asterisks are significant for they represent the words "of the plaintiff" in the original text of the language quoted. In *Armour & Co. v. Leasure*, 177 Md. 393, the Court said at p. 411, speaking of *res ipsa loquitur*: ". . . there is no question that it is not applicable to the facts of this case, for it has no application where the negligent act which produced the injury is shown by direct evidence." In *Cloverland Farms Dairy v. Ellin*, 195 Md. 663, the majority opinion held that there was not: ". . . a shred of evidence" to support the appellant's theory of an intervening, independent cause of the injury not attributable to the defendant. We hold that whether plaintiff or defendant shows that the injury complained of might have been caused either by the defendant's negligence or by the act of another, for which the defendant was not responsible, the doctrine will not apply. This is not to say that a defendant can

avoid its impact where it is otherwise applicable by mere contradictory testimony or by showing that it took every precaution to avoid the accident which happened. *Shirks Motor Express v. Oxenham, supra; Lee v. Housing Authority of Baltimore City,* 203 Md. 453; and *Cloverland Farms Dairy v. Ellin, supra.*

We think that the case is one in which the plaintiffs may not be helped by an inference of negligence from the mere happening of the accident. It must be determined whether on all the testimony there was evidence from which the jury could reasonably find that Coastal was negligent. There was no such evidence as to the driver of the stake body truck. He was not required to anticipate that the driver of the convertible would ignore the boulevard law and suddenly cut in front of him at the intersection. Unexpected and sudden as was the presence of the convertible before him, he cannot be expected nor required to have done other than he did. The convertible alone was responsible for the collision between it and the stake body truck, under the cases. *Sun Cab Co. v. Faulkner,* 163 Md. 477; *Monumental Motor Tours, Inc. v. Becker,* 165 Md. 32; and *Sonnenburg v. Monumental Motor Tours, Inc.,* 198 Md. 227. The decisive question is whether the distance which separated the stake body truck and the tractor-trailer was enough to impose a liability on the latter which the former did not bear. We think not. There is no evidence of speed that rises above speculation before the convertible entered the boulevard. Cf. *Darienzo Trucking Corp. v. Sullivan,* 202 Md. 32; and *Ness v. Males,* 201 Md. 235. The driver of the Coastal truck was confronted with a sudden emergency, not of his own making but caused by the blocking of the boulevard by the interloper convertible and the swerving of the stake body truck into the slow lane. As this happened, the Coastal truck was only twenty-five or fifty feet behind the stake body truck, which after striking the convertible, managed to pass it on the right and go on down the road. The Coastal truck was wider than the stake body truck. The driver

could not pass to the left of the convertible, which was some two or two and a half feet over in the slow lane. He had the alternative of striking the convertible and perhaps injuring or killing the passengers or attempting to avoid it. He chose the latter and swung to the right where there was a three or four foot asphalt gutter, in an effort to pass. His plan did not succeed because the curb caused the tractor-trailer to rock and go out of control. Perhaps perfection in anticipation, reactions and actions could have devised a means whereby the accident would have been avoided, but the driver of the Coastal vehicle is not to be tested by such a standard, but rather by what an ordinary man would do under the same circumstances. We think that the driver's actions, in the face of this sudden emergency, which he was not bound to anticipate, were comparable, in effect, to those of the driver in *Burhans v. Burhans,* 159 Md. 370, where no liability was imposed, and that the steps he took were reasonable under the circumstances to avoid the danger presented. Even as in the case of the stake body truck, the proximate cause of the injury, as far as the Coastal tractor-trailer was concerned, was the action of the convertible in blocking the highway in violation of the boulevard law.

The appellees argue that a comparison of the distance the northbound Coastal driver went, at the speed he estimates he was going, compared to the distance the southbound Coastal driver went, during the same time, is evidence of the latter's speed. We think that the estimates, both as to distance and speed, are too vague and inconclusive to form a basis of a finding of fact. The appellees argue further that the southbound Coastal driver should have stopped his vehicle in time to avoid the necessity of swinging to the right or striking the convertible. There was no testimony in the case as to the distance in which the heavily loaded tractor-trailer could have stopped (the appellees attempted to impeach the credibility of the southbound Coastal driver by asking him if, on deposition, he had not given an estimate as

to the time in which the tractor-trailer could have been stopped, but this would not be evidence from the witness stand, as to a stopping distance). The Coastal driver says that he did brake the truck, as well as swing to the right. The appellees' effort to show Coastal negligent because the tractor-trailer travelled one hundred seventy feet from Ordnance Road to the telephone pole, which it snapped off, fails, because from the testimony, the tractor-trailer evidently struck the curb sometime before it struck the telephone pole. It began to rock and go out of control from the striking of the curb. As was said in *Brooks v. Childress*, 198 Md. 1, 7, 11: "Negligence cannot be proven from testimony as to what happened after the accident. There is no evidence as to what occurred in the tractor after the collision. The truck driver may have been thrown from his position back of the wheel, with no control of the operation of the truck. The effect of the impact might have been to accelerate its speed by jamming the accelerator to the floor of the vehicle." It was also said in that case: "To have submitted this case to the jury would have required 'nice calculations of speed, time, and distance,' (*Greenfield v. Hook, supra,*) which is forbidden in boulevard cases where the unfavored vehicle fails to give the right of way."

In the *Darienzo* case, *supra,* we said: "This is not a right-of-way or intersection case. There was an appreciable length of time while both vehicles were running along the road before either the impact of the two or the crowding of the truck by the station wagon, whichever occurred." We said further in that case: "It must be noted that the *Sun Cab* case and the *Sonnenburg* case both involved accidents in which a favored vehicle not reasonably to be charged with anticipation of what ensued, was struck by an unlawful interloper and that the accidents happened with such speed and suddenness that the opportunity for avoidance on the part of the favored car was absent to a point which made the negligence of the interloper the sole proximate cause of the collisions." We think the language last quoted is ap-

plicable to the case before us and that nothing the Coastal driver did or failed to do could have been found to be the proximate cause of the accident and the ensuing injuries.

It is our view that the trial court should have directed a verdict in both cases at the conclusion of all of the testimony.

*Judgments reversed, with costs.*