BROADY *v.* BALTIMORE TRANSIT COMPANY

[No. 192, October Term, 1956.]

378

*Decided May 13, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HAMMOND and PRESCOTT, JJ., and WILLIAM R. HORNEY, C. J., Second Judicial Circuit, specially assigned.

*Lawrence B. Coshnear,* with whom was *David Friedman* on the brief, for appellant.

*William A. Hegarty,* with whom was *Hamilton O'Dunne* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This case below was submitted to a jury after the taking of testimony and instructions from the trial Judge, and the jury rendered a verdict in favor of the defendant. In due course, judgment on this verdict was made absolute in favor of the defendant for costs, and the plaintiff below entered an appeal to this Court.

On February 21, 1955, in the early afternoon, Lucy Broady,

together with her infant daughter, Phyllis, aged three years, the appellant here, boarded a street-car owned and operated by The Baltimore Transit Company, the appellee. Shortly before reaching her intended destination, Mrs. Broady pulled the signal cord, and proceeded with the plaintiff to the side doors located at the center of the street-car to alight. These doors are two in number and are opened and closed by electricity. When a weight of fourteen pounds or more is placed upon a treadle and the car is at a standstill, the doors are caused to open; and the electrical mechanism is set for the doors to remain open for two seconds, or slightly more, and then to close. Mrs. Broady testified she had Phyllis in her left arm at the time and "we stepped" down. The record fails to disclose with clarity just how Mrs. Broady stated she was holding the child, although she demonstrated this to the jury. The best we can gather from the record is that she claimed she had Phyllis under her left arm, with Phyllis' head forward and her feet dangling to the rear; that Mrs. Broady stepped down and was outside of the doors when she heard Phyllis screaming; that she looked and one of Phyllis' ankles was caught between the doors; and that Mrs. Broady also started screaming, whereupon, in a couple of seconds the doors were opened and Phyllis' foot was released. Relying upon the doctrine of *res ipsa loquitur,* this was all of the evidence offered by the plaintiff excepting that which related to her injuries.

The appellee then called the operator of the street-car, who was a man of thirty years of experience in that field of endeavor. He testified that on the occasion of the accident he heard the signal bell and made a normal stop; that he was in the process of permitting a passenger to leave by the front door, over which he had complete control; that a short while thereafter, he heard some one "holler" and his signal bell for an emergency, ring; that the doors are equipped with "pieces" of rubber where they meet in the center, and, inside of the rubber, there is something that causes the emergency bell to ring and that cuts off the power to start the car, when any object is caught between the doors; that upon hearing the bell, he immediately pushed his emergency switch that

released the doors, finished letting the passenger out of the front door, and then left the car by the front door himself; that he went directly to Mrs. Broady and inquired if the child were hurt; and, that upon being assured she was not, he proceeded on his trip. He further testified that he had inspected the doors when he started to work that day, and they were in good working condition; that after the accident. as soon as he arrived at the car barn he requested the shop man to inspect the doors; that the operator of a car has no control over the center door operation, excepting the emergency switch, which releases the power that closes them; and that he was equipped with a rear-view mirror but did not watch Mrs. Broady and the plaintiff "get off", something that he was not required to do.

Whereupon, a Mrs. Fulton, another passenger, was called by the appellee and stated she saw Mrs. Broady when she rang the bell to stop the car; that when Mrs. Broady "stepped down" she held the baby by the hand, and, when the door opened, Mrs. Broady picked up the baby; that when Mrs. Broady and the child were both on the outside, but the child's foot was still on the inside, the door closed; and, that very shortly thereafter, the child's foot was released.

The appellee next produced its former maintenance supervisor who testified that he had been employed by the appellee for thirty-six years; that two seconds is considered a safe interval of time from the time weight is removed from the treadle until the doors start to close; that this interval was set by the National Company that makes all kinds of equipment for different transit companies throughout this country; and, that he had tested the doors on the streetcar involved, on the day of the child's injury, and found them in perfect operating condition and with "proper timing".

## I

The appellant, by her counsel, insists that she offered sufficient facts to bring her case within the doctrine of *res ipsa loquitur;* that the appellee had exclusive control over, and responsibility for, the doors involved; that the doors closed upon her foot; and, that she suffered consequent damages.

She argues that this was all that she was called upon to prove in order to invoke the doctrine, and that she was entitled to an instruction from the trial Court that this made out a *prima facie* case. Quite a number of cases are cited that are claimed to support this contention. However, it is unnecessary to consider them here in detail, because, the above contention overlooks at least one very important requirement for the invocation of the doctrine of *res ipsa loquitur*. "The rule does not apply where it can be inferred from ordinary experience that the accident might have happened without the fault of the defendant. The accident must have happened irrespective of any voluntary action at the time by the party injured", as was stated in *Potts v. Armour,* 183 Md. 483, 488, 39 A. 2d 552. See also *Klan v. Security Motors,* 164 Md. 198, 200, 164 A. 235; *Williams v. McCrory Stores Corp.,* 203 Md. 598, 604, 102 A. 2d 253; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 144, 106 A. 2d 98. In this case, the injuries complained of were not caused by the action of the doors alone, but in conjunction with the manner in which Mrs. Broady was carrying the plaintiff when alighting from the street-car. Under these circumstances, it is not only possible, but very probable, that Mrs. Broady's negligence caused the child's foot to have been caught in the door. We hold that the trial Court was correct in its ruling on this contention.

## II

The appellant further contends that the trial Court erred in that part of its charge to the jury wherein is stated: "One of the questions involved as far as the Transit Company is concerned is whether there was any evidence of mechanical defects. There is no evidence of mechanical defects with the equipment and no evidence of negligence as to the time of closing (the doors) unless you find that the time allowed (2 seconds) amounts to negligence. * * * *otherwise there is no evidence,* and so this point (the time interval) is left to the Jury's consideration". The italicized words are the ones objected to by the appellant. She asserts they refer to the entire evidence, and, as a result, the only question of negligence left for the jury's determination was that of the time

interval for the doors to open and close, and this disregarded appellant's contention that it was the duty of the motorman to look into his rear-view mirror and to watch out for the safety of passengers leaving the car by the center doors. This contention fails for at least two reasons. First, the above portion of the Court's charge referred only to the question of negligence concerning mechanical defects and the time interval. In the rest of his charge, the judge had fully covered the question of other possible negligence and the degree of care required of common carriers in the transportation of passengers. Secondly, that degree of care was stated by Judge Alvey many years ago in the case of *Baltimore & O. R. R. Co. v. State, etc.,* 60 Md. 449, 462, and has been repeated by this Court in numerous decisions since. See *Brooks v. Sun Cab Co.,* 208 Md. 236, 242, 117 A. 2d 554. The rule is, that while common carriers of passengers are not insurers of absolute safety, yet they are bound to exercise reasonable care according to the nature of their contract; and, as their employment involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking. In this case, the doors in the center of the car were operated entirely by the passengers and the mechanical equipment, with the exception of the emergency switch. With this exception, the operator of the car had no control over them. It was neither his duty to open nor to close them. They were especially designed to eliminate the former crew of two men to each motor-car. It was his duty, as brought out in the evidence, to open and to close the front door near him, for the purpose of permitting passengers to enter and to leave the car. At the time Mrs. Broady and the plaintiff were getting off the car at the center doors, another passenger, who was leaving by the front door, required and occupied the operator's attention. Under these circumstances and the standard of care set forth above, we hold that there was no requirement that the operator follow the movements of each passenger leaving the car by the center doors.

An examination of the evidence detailed above will disclose that there was no claim or proof of any failure of the mechani-

cal equipment or that it was improper in any respect, excepting the claim that the time interval on the center doors was too short. Yet, there was no testimony that this time interval was not proper, or that it was not the one that was usually and customarily used. There was, however, direct testimony that the time interval was the one in common use throughout the country. We have, therefore, been unable to find any sufficient showing that would justify a finding of primary negligence on the part of the appellee, which makes it unnecessary to rule on the questions raised by the appellant concerning the trial Court's instructions on contributory negligence and the burden of proof in relation to contributory negligence.

*Judgment affirmed, with costs.*