MIRIAM HAWTOF *v.* EILEEN
ROSALIE FINE ET AL.

[No. 28, September Term, 1975.]

*Decided October 6, 1975.*

---

318

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*Michael G. Hendler* and *Bennett Gilbert Gaines* for appellant.

*William R. Hymes* for appellees.

MORTON, J., delivered the opinion of the Court.

This is an appeal from the action of the presiding judge, sitting in the Circuit Court for Baltimore County with a jury, in directing a verdict in favor of the appellees (defendants below) at the conclusion of the appellant's (plaintiff below) case. The plaintiff, Miriam Hawtof, had been injured as a result of her car having been struck by a car being driven by the appellee, Eileen Rosalie Fine.[1]

The record indicates the accident occurred on July 22, 1969, at approximately 2 p.m. on Old Court Road just east of its intersection with Greenwood Road in Baltimore County.

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, December 19, 1975.

1. The trial below was a bifurcated trial on the issue of liability alone.

Old Court Road runs east and west and Greenwood Road runs north and south. Old Court Road, east of Greenwood Road, is a four-lane highway with two lanes in each direction. It becomes a two-lane road west of Greenwood, which also is a two-lane road. A stop sign requires traffic traveling on Greenwood Road to yield the right of way to traffic on Old Court Road.

According to the evidence, the appellant, Ms. Hawtof, was driving her car, just prior to the accident, in a westerly direction on Old Court Road. As she approached the intersection with Greenwood Road, she observed a car driven by Leila K. Sandler, who had been driving south on Greenwood, standing still and blocking the westbound lanes of Old Court Road in which Ms. Hawtof was traveling. Ms. Hawtof immediately applied her brakes and was able to stop some eight to ten car lengths from the Sandler car. At the same time, according to Ms. Hawtof, the appellee, Ms. Fine, was driving her car east on Old Court Road and as she reached the intersection where the Sandler vehicle was standing, apparently waiting to make a left turn onto Old Court Road, Ms. Hawtof observed the Fine vehicle approach the intersection traveling at an estimated speed of 50 miles per hour when it "veered over" to "a gravel shoulder and it began churning up the gravel and dust and moving in a very erratic manner, as though it was going to turn over or turn around, I didn't know what it was going to do, and then shot across the road in a diagonal path, and hit me." Ms. Hawtof further testified that at the time she was hit by the Fine car, her car was nearly at a standstill in the so-called slow or northernmost lane of Old Court Road. "She hit me, bounced off, hit me again, bounced off, hit again, bounced off, and then went off the side of the road * * *."

Shirley Krefetz, a passenger in the right front seat of the Sandler car, testified that they had proceeded south on Greenwood Road, stopped at the stop sign and then proceeded onto Old Court Road preparatory to making a left turn when she observed the Fine car and "screamed Leila, stop." When asked why she screamed "stop," she replied: "Because I saw an oncoming car that was like almost on top of us."

In directing a verdict in favor of the appellees, the presiding judge advised the jury of the boulevard law and the rights of favored drivers. He also referred to the case of *Coastal Tank Lines v. Carroll,* 205 Md. 137, and quoted a part of the opinion dealing with the standards governing the actions of a driver in emergency situations. He then advised the jury "that there is no evidence legally sufficient upon which you might base a finding that Miss Fine was guilty of negligence which contributed to or was the proximate cause of this accident."

The driver of the Sandler car did not testify, in fact did not attend the trial, and a verdict was directed in favor of Ms. Hawtof against Ms. Sandler "with leave to extend the damages at a time when a new jury panel would pass upon that." Subsequently, a joint tortfeasor's release was filed in the proceedings against Ms. Sandler. This appeal by Ms. Hawtof followed, it being contended that the trial judge erred in directing a verdict against her and in favor of the appellees.

While there can be no question that the failure of the Sandler car to observe the boulevard law was a contributing proximate cause of the accident involving the Hawtof and Fine cars, the boulevard law affords no protection to the Fine car in a claim by an equally favored driver. We are confronted here, not with a claim of an unfavored driver against a favored driver or a favored driver against an unfavored driver, but rather with a claim of one favored driver against an equally favored driver. Otherwise stated, this is a claim of an innocent bystander against a favored driver.

It appears, therefore, that the correctness of the trial judge in granting a directed verdict in favor of the Fines turns upon the issue of whether the Fine car was confronted with a sudden emergency by the presence of the Sandler car on the favored highway and, if so, whether the action taken by Ms. Fine in the face of the emergency amounted to negligence or did she act as an ordinarily prudent person would have acted under the stress of the emergency.

In *Warnke v. Essex,* 217 Md. 183, 186-87, the Court of Appeals set forth rather specific guidelines:

"Generally, the operator of an automobile who suddenly finds himself in a position of peril is not required to exercise the same care as when he has ample time to reflect upon the course of action he should pursue. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795 (1930). However, if the operator is not actually in a position of sudden peril, or, if the peril arises because of his own negligence, then the emergency rule is not applicable. 5 *Am. Jur., Automobiles,* § 171; 60 C.J.S., *Motor Vehicles,* § 257.

The relevant inquiry, then, is whether an ordinarily prudent person would have acted in the same manner as the defendant did in this case. The mere fact that a person finds himself in a predicament or emergency does not automatically relieve him of the obligation to use ordinary care. The amount of care might change, of course, but the degree or standard of *ordinary care* is always the same, *i.e.,* the care that would be used by an ordinarily prudent person under the same circumstances, the emergency itself always being considered and weighed as one of the circumstances. See 2 *Harper and James, Law of Torts* (1956), § 16.11, and *Prosser, Torts* (1955), § 32.

Whether the operator of an automobile was confronted with an emergency, and whether he acted negligently under the circumstances, are generally questions for the jury. 10B *Blashfield, Automobile Law and Practice* (1957), § 6648."

In that case the appellant, Warnke, plaintiff below, was driving north in the fast lane of U.S. Highway No. 1, a four-lane highway, and the appellee, Essex, the defendant below, was driving south in the fast lane on the same highway. Suddenly the plaintiff saw the defendant cross the center line of the highway a short distance in front of her. The plaintiff turned to her right into the slow lane as far to the curb on her side of the highway as she could go, but the defendant's automobile veered entirely across the

northbound fast lane into the slow lane and struck the plaintiff's car. The driver of a car following the defendant's car testified that another vehicle, traveling in the slow lane about a car length ahead of defendant, suddenly switched in front of the defendant's car and he then added: "The first thing I could see, Mr. Essex tried to put on his brakes to stop, * * * I don't know what happened then. His car got out of control, I suppose."

The trial judge granted the defendant's motion for a directed verdict at the conclusion of the plaintiff's case. The Court of Appeals reversed the action of the trial judge, stating that "there was no evidence to explain why the defendant lost control so as to strike the automobile of the plaintiff in lane 4 [slow lane] when lane 3 [fast lane] was clear. Under these circumstances it is not clear that the defendant was faced with such an emergency as would justify him in taking the action he took. The evidence produced as far as this case had progressed in the trial court was not sufficient to find that there was an emergency as a matter of law. On the contrary, under the facts and circumstances shown, the existence or non-existence of an emergency was clearly a jury question. It is also clear that the question whether the defendant acted reasonably under the stress of the emergency — if in fact an emergency did exist — was also a question for the jury to decide." *See also Virginia Freight v. Montgomery*, 256 Md. 221; *Effler v. Webber*, 18 Md. App. 162; *Armstrong v. Johnson Motor Lines*, 12 Md. App. 492.

We think the same may be said of the evidence in the case at bar. It is clear that the intruding car, driven by Ms. Sandler, was at a standstill on Old Court Road blocking the westbound lane of traffic in which Ms. Hawtof was traveling. There was no evidence, however, that any part of the standing Sandler car was protruding into the eastbound lanes of Old Court Road upon which the Fine car was traveling. Moreover, there was no evidence to explain why Ms. Fine found it necessary first to drive off the road onto the shoulder in an erratic manner as if she were going to turn over or turn around and then veer across three lanes of

traffic, the eastbound slow and fast lanes as well as the westbound fast lane, and strike the Hawtof car several times, which was nearly at a standstill in the westbound slow lane.

We think, under the facts and circumstances here, that the existence or non-existence of an emergency was, as in *Warnke*, clearly a question for the jury. And we think it equally clear that the question of whether Ms. Fine acted reasonably under the stress of the emergency — if in fact an emergency did exist — was also one for the jury to determine. Thus, we find that the trial judge improperly directed a verdict in favor of appellee, Eileen Rosalie Fine, at the conclusion of the appellant's case and we are compelled to reverse his action with respect to appellee, Eileen Rosalie Fine, and grant a new trial.

Likewise, we cannot agree that the trial court correctly granted the motion for a directed verdict with respect to appellee, Benjamin Fine. He contends that "the Record is absolutely devoid" of any evidence of negligence on his part and "devoid of any evidence of agency" between him and the operator of the car, Eileen Rosalie Fine. Such a contention overlooks the principle that where a declaration in an action *ex delicto* contains an allegation that a defendant is the owner of a motor vehicle in the accident upon which suit is being brought, a denial of ownership must be separately pleaded by the alleged defendant-owner. In the absence of such a special plea, ownership of the vehicle becomes an established fact. Maryland Rule 342 c 2 (f). Once ownership of the motor vehicle is established, there arises a presumption that the operator of the involved vehicle is the agent, servant or employee of the owner. *Hoerr v. Hanline*, 219 Md. 413. "This presumption is rebuttable; but, the evidence required to destroy it as a matter of law must be both uncontradicted and conclusive, and if the evidence as to agency be contradicted, or if uncontradicted is not conclusive, the question of agency should be submitted to the jury." *Hoerr v. Hanline, supra*, at 420. *See also Rogers v. Frush*, 257 Md. 233; *House v. Jerosimich*, 246 Md. 747.

Here, the appellant's declaration contained an allegation

324

that Benjamin Fine was the owner of the car driven by Eileen Rosalie Fine. The responding plea filed by Benjamin Fine contained no denial of ownership. Since no evidence was produced to rebut the presumption that Eileen Rosalie Fine was his agent, servant or employee it was improper to grant the motion for a directed verdict in Benjamin Fine's favor.

> *Judgment reversed; new trial awarded; costs to be paid by appellees.*